# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION


VAN TRONG PHAN,

      Petitioner,

v.                                          Case No. 3:07-cv-888-J-32HTS
                                                     3:04-cr-93-J-32HTS

UNITED STATES OF AMERICA,

      Respondent.

_____

## REPORT AND RECOMMENDATION[1]

### i. Status[2]

This cause is before the Court on the Order (Doc. #10;
Referral Order) in case 3:07-cv-888-J-32HTS referring to the
undersigned the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside,
or Correct Sentence by a Person in Federal Custody (Doc. #1;
Petition) for appointment of counsel for the Petitioner, "an
evidentiary hearing on Grounds One and Two of the [P]etition[,]"

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C.
§ 636 and Rule 6.02, Local Rules, United States District Court, Middle District of
Florida, within fourteen (14) days after service of this document. Failure to file
timely objections shall bar the party from a *de novo* determination by a district
judge and from attacking factual findings on appeal.

[2] Pursuant to § 205(a)(5) of the E-Government Act of 2002, this Report
and Recommendation is available electronically. It is not otherwise intended for
publication or to serve as precedent.

Referral Order at 1, and the preparation of a Report and Recommendation as to those grounds. *Id*. at 2. An evidentiary hearing was held on October 2, 2009.

## ii. Testimony

### A. Alan Eric Rosner, Esquire

Mr. Rosner, who was admitted to the Florida Bar in 1981, works as an attorney in Jacksonville, Florida. His practice has involved primarily criminal law, and he has focused on criminal defense since about 1992. He is admitted to the Middle District bar and has also appeared before the Eleventh Circuit Court of Appeals.

Concerning his representation of Mr. Phan, counsel's discussion of a fee arrangement took place with members of the family, who were to be financially responsible. However, he talked to Petitioner about the scope of services contemplated, which would include sentencing but not a trial or appeal. Should trial become necessary, a separate fee would be required. Mr. Rosner and his client conversed about the advantages of an early plea. At some point, Movant determined he wanted to cooperate with the government, and to change his plea to guilty.

Counsel discussed the provisions of the proposed plea agreement with Petitioner, including the appeal waiver. Mr. Phan had no trouble conversing in English, and he seemed to exhibit a full understanding of the plea agreement. Had he told Mr. Rosner "that he was not guilty of the enhancements or not guilty of any of

the conduct that . . . he was alleged to have committed, then [the attorney] would not have executed the plea agreement with him." Transcript of Evidentiary Hearing (Doc. #21; Tr.) at 66; *see also id.* at 61 (explaining, in the waiver of appeal context, he "was satisfied that [Mr. Phan] did understand it or else [he] would have explained it to him again in different ways. And then if it was just impossible for him to understand it and he wanted to appeal, then [he] would not have let him sign the plea agreement. [H]e had the option of a straight up plea where you don't . . . have these waivers."). Subsequently, Petitioner entered into the agreement and proceeded through a change of plea hearing. Counsel had no doubt the "plea was entered into knowingly, voluntarily and intelligently[.]" *Id.* at 31.

After sentencing had taken place, Petitioner seemed relieved and expressed no dissatisfaction with the representation. Although neither Mr. Rosner nor his client were happy with the enhancements, Mr. Phan did not at any time before sentencing reveal plans to appeal the sentence. Counsel said nothing "to the effect of don't worry about these enhancements now, we can appeal them or challenge them later[.]" *Id.* at 23; *see also id.* at 34 ("I do not recall making that statement to him. I would not have made that statement to him."), 66-68. Without downward adjustments based in part on the government's agreed recommendations, Mr. Phan would have faced

an imprisonment range starting at approximately 262 months. Ultimately, he was sentenced to 140 months.

After sentencing, Mr. Rosner received a letter from Movant dated September 19, 2006, and postmarked September 20, 2006, which was the first correspondence from him since the September 7, 2006, sentencing.[3] There is no record of when the document was received. The letter, in relevant part, states:

> I still wish the better outcome but I guess this is it. Everything was meant to be the way it's supposed to. So -- so is it it with my case, . . . Mr. Rosner, are you through? What if I still want to get . . . someone to help me with the controlled buys, to get some of the levels knocked off, what would I have to do? Are you still helping me to contact the DEA agents or we'll have to pay another fee? . . . [W]hat if there's a new law coming out like going down to like 65 percent instead of 85 percent or parole, whether it will [be] retroactive or not, will you still help me appeal it? And if there will be a new retainer, what would it be? Please let me know. Once again, thanks so much for your great job, Mr. Rosner. I hope to hear from you soon.

*Id.* at 25; *see also* Government Exhibit 2. There is also a P.S. relating to a controlled buy, and a P.S.S. telling Mr. Rosner to "[p]lease give [Petitioner's] mother a copy of [his] case work, such as motion of discovery, arrest warrant, search warrant, et cetera," since Mr. Phan "want[ed] to learn more about [his] case in case [he] want[ed] to appeal on anything later." Tr. at 26; *see also* Government Exhibit 2. Finally, the P.S.S. asked that the

---

[3]    Counsel had received no calls from Petitioner, though his policy is to accept collect calls.

mother be called "at her new home phone number[.]" Tr. at 26; *see also* Government Exhibit 2.

Mr. Rosner did not interpret the letter "as a request to appeal the judgment, conviction and sentence that was entered in [Petitioner's] case[.]" Tr. at 28. The references to appealing were taken to concern a potential future "change in gain time provisions." *Id.; see also id.* at 42. The request for the file to be given to Petitioner's mother was understood as being made only "in case [he] want[ed] to appeal on anything later." *Id.* at 44. If Movant "had communicated . . . that he wanted to appeal in some fashion, then [counsel] would have filed a notice to appeal just to make sure [there was no] misunderstanding [as to] what he[ was] saying." *Id.* at 40.

Counsel responded to the letter with one of his own, dated September 26, 2006, in which he essentially explained the representation had ended and "more importantly, that [Petitioner's] right to appeal was extremely limited, not applicable, because certainly at [that] point the request to appeal the 85 percent rule would not be applicable, or that the time frame had expired for purposes of appeal." *Id.* at 29-30; *see also* Government Exhibit 3. Mr. Phan had not, up to the time the response was written, "ever asked . . . to take an appeal of his case[.]" *Id.* at 30; *see also id.* at 31 (still no request to appeal as of January 2, 2008). Mr. Rosner had no recollection of any postsentencing verbal request to

-5-

file an appeal, "[a]nd had it occurred, then [he] would have filed a notice of appeal[.]" *Id.* at 33; *see also id.* at 39 ("[A]n appeal would have been filed immediately had he requested that I file an appeal."), 48-50. However, the letter from Petitioner was received after the deadline for taking an appeal. In such a situation, even had it been requested, counsel "would not have filed an untimely notice of appeal. [He] would advise the client that the time has expired to file an appeal." *Id.* at 64.

**B. Van Phan**

Petitioner, represented by Mr. Rosner, decided to enter a plea of guilty. He understood the representation would continue through sentencing, but a separate fee would be needed in relation to any appeal.

Because Mr. Phan "didn't understand what was going on with the plea," he "asked Mr. Rosner to leave [the agreement with him] so [he could] read over it." *Id.* at 75. After Petitioner had the document for two to three days, counsel returned and said the date had arrived "to sign the plea and that's when [they went] over it." *Id.* The process took approximately 30 minutes, with each page being reviewed. Movant told his lawyer the enhancements did not apply to his situation, since he had not "led more than five people[,]" *id.* at 77, and his firearms were "just for [a] collection[.]" *Id.* at 78. Mr. Rosner explained in regard to the first enhancement "that because [Mr. Phan was] in the conspiracy,

-6-

[he was] being stuck with that." *Id.* Likewise, "[h]e said that any time in the conspiracy . . . there's drug trafficking and there[ are] gun[s] around[ or i]f they find the guns in your house, then . . . they stick you with the guns." *Id.* at 79.

Concerning the finality of the plea agreement, counsel, after consulting someone, told him "that [they could] always come back and appeal it later[.]" *Id.* at 81. Had this not been said, Petitioner "would [have] ask[ed counsel] to go talk to [the prosecutor] again or something, you know, be able to get a different lead or something." *Id.* at 85. He would not have signed the plea agreement. The collateral attack provision was "probably explain[ed, but Mr. Phan's] mind wasn't there or something, [he didn't] really understand[.]" *Id.* at 87.

Petitioner went ahead with the plea despite the erroneousness of various specific statements contained in the factual basis. Included among them was the assertion Mr. "Phan continued to act as the leader or organizer of the marijuana distribution operation and Steven Nguyen acted at Phan's direction." *Id.* at 103 (internal quotation marks omitted). He failed to mention this at the plea hearing "because [he] didn't know . . . whether [he] had the right to talk or anything" and was relying on his attorney. *Id.* at 104. Petitioner admitted the truth of the factual basis at that hearing due to his reliance "on [his] lawyer's way of fighting [the] case."

*Id.* at 105. At the plea, he "wasn't telling the whole truth" even though he had sworn to do so. *Id.* at 107.

Additionally, Mr. Phan did not agree with the portion of the factual basis declaring certain weapons "were possessed by him in connection with the charged conspiracy." *Id.* at 115 (internal quotation marks omitted); *see also, e.g., id.* at 141. He disagreed as well with "the part of the plea agreement that talks about [a] $50,000 shipment [e]ven though [he] told the Court [at the plea hearing] on October 26, 2004, that [he] agreed[.]" *Id.* at 126.

As for entering the plea "knowingly and intelligently, voluntarily and freely[,]" *id.* at 119 (internal quotation marks omitted), Petitioner affirmed he was doing so because he "wasn't fully understanding the whole thing of it[ and] didn't understand some of the words that they were talking about." *Id.* He "just relied on [his] lawyer[.]" *Id.*

Immediately after sentencing, Petitioner asked Mr. Rosner "about the appeal for the gun enhancement and the leadership role that [they] were talking about." *Id.* at 89. Counsel replied he had already done "the best [he could] do." *Id.* "So [Mr. Phan] asked Mr. Rosner [to] please come back to the courthouse, to the" Marshal's holding cell so they could further discuss appealing. *Id.* at 89-90. Movant was kept in the cell for "45 minutes to an hour," *id.* at 90, but Mr. Rosner did not appear. Nor did he come to see his client in jail or call him.

Mr. Phan attempted once to call his lawyer, the day of sentencing, but he could not "get through . . . [b]ecause the phone was blocked[,]" meaning "[t]hey [would not] accept [his] collect call." *Id.* at 93. He talked to his mother that same day, mentioned he would be "appeal[ing] on the guns and the leadership role[,]" *id.* at 94, and asked her to call Mr. Rosner. Although Petitioner spoke with his mother again that week, the matter was not "discuss[ed] because [he] thought Mr. Rosner [was] in the process of doing it." *Id.* at 95. He never learned whether she had actually gotten through to the attorney.

The September 19, 2006, letter was intended in part to ask whether counsel was "still . . . doing [the] appeal or not." *Id.* at 96. Petitioner testified the sentence "I want to learn more about my case in case I want to appeal on anything later . . . means I want to appeal it." *Id.* at 98 (internal quotation marks omitted). He desired "copies of all [the] material . . . because [he] want[ed] to appeal [his] gun enhancement and the leadership role." *Id.* at 129. Nevertheless, "when Mr. Rosner [didn't] come to see [him, Mr. Phan] thought that was a fate that was supposed to be setting down on" him. *Id.* at 125. "[A]fter the ten day[s] was over, and he never called [or did] anything . . ., [Petitioner] thought [he had] lost [his] right to appeal already." *Id.* at 123. Despite this, it was his understanding he had ten days plus a year

to appeal, based on what the district judge told him at sentencing. *See id.* at 130-31.

### iii. Discussion

The Petition alleges, as its first ground, that "[t]he Plea was not knowingly and voluntarily made." Petition at 4; *see also* Brief in Support of 28 U.S.C. § 2255 Motion to Vacate, Set-Aside, or Correct Sentence by a Person in Federal Custody (Doc. #2; Brief) at 2. It is explained defense counsel, after being informed of Mr. Phan's disagreement with the sentencing enhancements in the plea agreement and despite its appeal waiver provision, instructed his client to "go ahead and sign the plea and [they could] appeal it later[.]" Petition at 4; *see also* Brief at 2-3. Second, it is claimed that, subsequent to sentencing, counsel refused to "file an appeal because of the waiver." Petition at 4; *see also* Brief at 4-5.

In response, the United States emphasizes "[t]he record reflects that the defendant made a knowing and voluntary waiver of his right to attack his conviction, either directly or collaterally." United States' Response Motion to Dismiss Defendant's *Pro Se* Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. #8; Opposition) at 2. Further, the government urges "[t]he allegations contained in the defendant's motion are wholly negated by the record." *Id.* at 6.

## A. Credibility

The testimony received from Mr. Rosner and Petitioner differ in several respects. To the extent it is contradictory and not subject to reconciliation, a credibility finding must be made. *See United States v. Gonzalez*, 71 F.3d 819, 828 (11th Cir. 1996); *see also United States v. Boulette*, 265 F. App'x 895, 898 (11th Cir. 2008) (per curiam); *United States v. Ramirez-Chilel*, 289 F.3d 744, 749-50 (11th Cir. 2002); *United States v. Cosgrove*, No. CR508-016, 2009 WL 1759602, at *1 n.1 (S.D. Ga. June 19, 2009); *United States v. Crisp*, 542 F. Supp. 2d 1267, 1287-88 (M.D. Fla. 2008) (report and recommendation of magistrate judge accepted by district court).

In making its credibility determination, the Court has taken into account the demeanor of the witnesses on the stand, their interest in the outcome of the case, their responses to questions on direct and cross-examination, and the consistencies or inconsistencies in their testimony. For example, it is noted Mr. Phan admitted he was testifying in contradiction to his earlier sworn statements made during the plea hearing. He presented other inconsistent assertions as well and in general did not appear to be a credible witness. Mr. Rosner, on the other hand, offered a significantly more consistent and plausible account of the relevant events. After careful consideration, the Court is unable to credit the testimony of the Defendant to the extent it conflicts with that of Mr. Rosner or is otherwise unworthy of belief.

**B. Appeal Waiver**

At the plea hearing, which was held on October 26, 2004, the seriousness of the proceedings was impressed upon Mr. Phan. Defendant was placed under oath and cautioned, *inter alia*, that if he did "not tell the truth, [his] answer could later be used against [him] in [a] prosecution for perjury or false statement, or in any collateral proceeding challenging the entry of [his] plea." Digitally Recorded Change of Plea (Doc. #915; Plea Tr.) at 7-8. He stated he "fully underst[oo]d." *Id.* at 8. Thereafter, Defendant's attention was drawn to "page 14, paragraph five" of the Plea Agreement (Doc. #415 in case 3:04-cr-93-J-32HTS, and Government Exhibit 1, received at the evidentiary hearing; Plea Agreement), to the section "entitled Appeal of Sentence[; W]aiver." Plea Tr. at 16. The following exchange then took place.

> Do you understand that based upon a provision of your plea agreement, you are waiving your right to appeal your sentence,[4] and that by this waiver you give up your right to appeal or contest your sentence directly or collaterally on the ground that the sentencing guidelines [in] any respect are unconstitutional, on the grounds that any fact found by the court for sentencing was not alleged in the indictment, . . . ?
>> Now, do you understand that provision?
>> THE DEFENDANT: Yes, sir.
>> THE COURT: And you agree to it?
> (The defendant conferred with counsel off the record.)
>> THE DEFENDANT: Yes, sir.
>> THE COURT: And you accept it?

---

[4]   The Plea Agreement reads, in part, "defendant . . . expressly waives the right to appeal [his] sentence, directly or collaterally . . . ." Plea Agreement at 14.

```
                THE DEFENDANT: Yes, sir.
                THE COURT: Are you willing to be bound by it?
                (The defendant conferred with counsel off the
        record.)
                THE DEFENDANT: Yes, sir, Your Honor.
                THE COURT: And you do so knowingly, intelligently,
        and voluntarily and freely?
                THE DEFENDANT: Yes, sir.
```

*Id.* at 16-17.

The colloquy continued, with further explanation of the appeal waiver, including that he was waiving his "right to appeal [his] sentence directly or collaterally on any other ground" except in certain enumerated situations. *Id.* at 18. Petitioner again acknowledged that he understood and agreed to be bound. *See id.* at 18-20. The Court specifically elaborated upon "the word collaterally as it's used in the plea agreement." *Id.* at 20. It was noted "[a] collateral attack is a motion that attempts to defeat a criminal conviction and obtain release from custody by a separate proceeding after direct appeals have been exhausted and denied." *Id.* As an example, the Court stated "[s]uch a motion, brought pursuant to Title 28, United States Code, Section 2255, might argue . . . that [Defendant's] counsel was ineffective[.]" *Id.* Mr. Phan asserted he understood and was assenting to the provision freely and voluntarily. *Id.* He testified that he had discussed his case fully with his lawyer, *id.*, and that he had no complaints regarding the representation. *Id.* at 21; *see also id.* at 59.

Also discussed at the plea hearing was Defendant's stipulation to enhancements for his role in the offense and possession of firearms in connection therewith. *See id.* at 34-35. After the factual basis included in the Plea Agreement was read into the record, Mr. Phan admitted "the truth of the report[.]" *Id.* at 54. He further acknowledged it in fact described what he had done. *See id.* Defendant indicated no one had coached him "or suggested that [he] answer untruthfully any of the questions asked . . . by the court . . . because of any agreement, promise, or understanding that[ had] not been presented[.]" *Id.* at 62. He had no "agreement, promise, or understanding with the prosecuting attorney, government agent, or anyone else other than what[ was] stated in the record[.]" *Id.* at 61-62.

Despite all this, Mr. Phan's arguments are not precluded by the appeal of sentence waiver. First, as his "plea agreement waives only his right to challenge his sentence on appeal, and not his conviction, [he] has not waived his right to challenge the voluntariness of his guilty plea." *United States v. Bradford*, No. 08-16771, 2009 WL 2195801, at *1 n.1 (11th Cir. July 24, 2009) (per curiam) (citation to record omitted). Even where a waiver provides that a defendant is waiving his right to appeal both conviction and sentence, it has been held "challenges [to] the validity of [a] guilty plea" are not barred. *Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam). Moreover, "an appeal

waiver does not relieve counsel of the duty to file a notice of appeal on request." *Id.* at 974.

### C. Plea Involuntary or Unknowing

Movant's first issue involves a simple factual determination. Mr. Phan claims his lawyer told him to "go ahead and sign the plea and [they could] appeal it later" regardless of the appeal waiver provision. Petition at 4. Mr. Rosner denies that such advice was given. Again, Petitioner's testimony will not be credited where it conflicts with that of his former attorney.

As previously observed, Mr. Phan testified at the plea hearing that no one had coached him or suggested that he respond "untruthfully [to] any of the questions asked . . . by the court . . . because of any agreement, promise, or understanding that's not been presented to the court[.]" Plea Tr. at 62.[5] Yet at that very hearing he proclaimed he understood and agreed to be bound by an appeal waiver provision through which he was waiving the right to appeal his sentence except in certain specific situations—and none of the situations appeared to encompass basing the sentence in part on enhancements stipulated to by a defendant and supported by facts admitted by him. Mr. Phan asked the Court no questions about whether an appeal of the enhancements was somehow covered by an exception to the waiver. He now

_____

[5]     "There is a strong presumption that statements made during the plea colloquy are true." *Patel*, 252 F. App'x at 975.

unpersuasively claims his "mind wasn't there or something" when counsel initially explained portions of the appeal waiver, Tr. at 87, and that during the plea hearing he was unaware "whether [he] had the right to talk or anything[.]" *Id.* at 104.[6] Even were he otherwise generally credible (which he is not), the Court would reject Petitioner's belated assertion of an understanding with counsel that he could appeal the enhancements irrespective of the appeal waiver.

### D.  Refusal to File Notice of Appeal

Similarly rejected are Mr. Phan's allegations concerning instructions given to counsel about filing an appeal, requests to speak with him in that regard, and an attempt to telephone him personally and through a relative.  Apart from Petitioner's untruthfulness with the Court and other indicia of a lack of credibility, the contents of the September 19, 2006, letter to Mr. Rosner stand in considerable tension to his present assertions.  In that letter, he made no mention of any previous instructions to appeal or attempts to reach his attorney.  Nor did he address in some fashion the alleged failure of the lawyer to visit him upon request.  Had these incidents actually occurred, it seems likely they would have been referenced in the letter.  Interesting as well is Mr. Phan's admission he did not thereafter discuss with his

---

[6]     At the plea hearing, the Court specifically told Mr. Phan that if he did not "understand the questions or the words . . . use[d], feel free to ask that they be explained."  Plea Tr. at 8.

mother whether she followed his supposed instructions to phone Mr. Rosner, weakly claiming the omission occurred "because [he] thought Mr. Rosner [was] in the process of" appealing. *Id.* at 95. And he states he has never, even during the intervening years, "learn[ed] from [her] as to whether she got through to" the lawyer. *Id.*

Petitioner's testimony having been discounted, the issue remains as to whether Mr. Rosner, upon receipt of the September 19, 2006, letter, acted ineffectively by not filing a notice of appeal or consulting with Mr. Phan. "In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court held that *Strickland v. Washington*, 466 U.S. 668 (1984), applies to determine whether counsel was ineffective for failing to file a notice of appeal." *Devine v. United States*, 520 F.3d 1286, 1287 (11th Cir. 2008) (per curiam) (citations abbreviated); *see also Patel*, 252 F. App'x at 972. A two-part test is employed whereby a movant must "demonstrate[] ineffective assistance of counsel by showing (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant." *Devine*, 520 F.3d at 1288 (internal quotation marks omitted); *see also Patel*, 252 F. App'x at 972.

If a client "specifically requests" his lawyer to file an appeal, failure to do so is per se "professionally unreasonable[.]" *Devine*, 520 F.3d at 1288 (internal quotation marks omitted); *see also Patel*, 252 F. App'x at 972. Based on the accepted testimony

and other evidence, there was no specific request that Mr. Rosner file an appeal.  This does not end the inquiry, however.

Under certain circumstances, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal[.]" *Devine*, 520 F.3d at 1288 (internal quotation marks omitted); *see also Patel*, 252 F. App'x at 972-73.  The word *consult* in this context means "advising the defendant about the advantages and disadvantages of taking an appeal, *and* making a reasonable effort to discover the defendant's wishes." *Devine*, 520 F.3d at 1288 (internal quotation marks omitted).  Mr. Rosner testified that after the sentencing Petitioner seemed relieved and not "dissatisfied with the sentence" though "[o]bviously he would have liked to have received a lesser" punishment.  Tr. at 22.  He did not, though, describe informing Mr. Phan "about the advantages and disadvantages of taking an appeal" or any efforts undertaken "to discover [his] wishes." *Devine*, 520 F.3d at 1288 (internal quotation marks omitted).  It appears no consultation, as defined, took place.  Rather, counsel's position was Petitioner would "have to request[7] that [he] file the appeal . . . [a]nd that was just not ever *discussed*." Tr. at 40 (emphasis added).

It must, consequently, be determined whether a duty to consult arose.  The duty is triggered "when there is reason to think either

---

[7]     Mr. Rosner clearly stated that had Mr. Phan "use[d] any type of language that indicate[d] he want[ed] to appeal in some fashion, even if he [didn't] use the word 'appeal,' [he] would take that as a request to appeal." Tr. at 40-41.

(1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Devine*, 520 F.3d at 1288. While Petitioner has failed to establish the existence of nonfrivolous grounds for appeal or otherwise show a rational defendant in his situation would have sought an appeal, a closer question is presented by the second alternative.

It is undisputed the letter dated September 19, 2006, admitted into evidence as Government Exhibit 2 (Letter), was written by Mr. Phan and received by Mr. Rosner. It is also clear the Letter had been read by counsel no later than September 26, 2006. *See* untitled letter from Alan E. Rosner dated September 26, 2006, received as Government Exhibit 3. Rule 4(b)(1), Federal Rules of Appellate Procedure (Appellate Rule(s)), requires a notice of appeal to "be filed in the district court within 10 days after . . . the entry of either the judgment or the order being appealed[.]" Although the sentence was imposed on September 7, 2006, the judgment is dated September 12, 2006, *see* Judgment in a Criminal Case (Doc. #855 entered in case 3:04-cr-93-J-32HTS; Judgment) at 1, and the docket sheet indicates it entered on September 12, 2006. September 26, 2006, being the tenth day (excluding weekends and the day of the event) after the Judgment entered, *cf*. Appellate Rule 26, Mr. Rosner was mistaken in his

belief the time for filing a notice of appeal had run. Thus, whether an untimely communication from a defendant would fail to give rise to a duty of consultation is immaterial, and counsel's performance must be deemed ineffective if Mr. Phan's Letter, under all the circumstances, reasonably demonstrated an interest in appealing. This is so "even [though] the defendant . . . signed a limited waiver of his right to appeal his sentence" and may have no meritorious grounds for appeal. *Gaston v. United States*, 237 F. App'x 495, 496 (11th Cir. 2007) (per curiam); *cf. Ashcraft v. Secretary, Fla. Dep't of Corrs.*, No. 08-15660, 2009 WL 2447358, at *2 (11th Cir. Aug. 10, 2009) (per curiam); *McElroy v. United States*, 259 F. App'x 262, 264 (11th Cir. 2007) (per curiam) (holding "the district court erroneously concluded that to satisfy the prejudice prong of the *Strickland* test, [the petitioner] was required to establish that he would have had an arguably meritorious claim on direct appeal").

Before turning to the Letter itself, the relevant context should be reviewed. Petitioner's "conviction was the result of a guilty plea, which tends to indicate that he was interested in seeking an end to judicial proceedings." *Otero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007) (per curiam) (bracketing and internal quotation marks omitted). Further, as part of that plea, he "explicitly agreed . . . to waive the right to challenge" his sentence on appeal except under certain limited circumstances not

demonstrated to embrace his present dissatisfactions. *Id.* at 1271.

He then seems to have "received the sentence he bargained for[.]"
*Id.* at 1270; *see* Tr. at 21 (testimony by counsel that due to
requested downward departures Mr. Phan was spared having to face a
sentence range beginning at approximately 262 months, receiving
instead 140 months); Judgment at 2 (imposing 140-month sentence).
These factors all weigh in the government's favor.

Petitioner's Letter, penned twelve days after the imposition
of sentence, represents the first and only communication directed
toward his lawyer suggesting any potential interest in appealing.[8]
The Letter is tentative in its approach, with Mr. Phan beginning by
expressing acceptance and resignation. He asks about help with
future assistance to the government and hypothetically inquires as
to a possible upcoming change in the law. Only in a P.S.S. is
there any hint of an interest in appealing his sentence, and that
reference is quite vague and uncertain. He asks that "a copy of
[his] case work, such as motion of discovery, arrest warrant,
search warrant . . . etc." be given to his mother because he
"want[ed] to learn more about [his] case, in case [he] want[ed] to
appeal on anything later." Letter at 1. At most, then, the Letter
evidences a general interest on Movant's part in exploring the
record for deficiencies that might form a basis for appealing some

---

[8]    No calls from Mr. Phan had been received by his attorney's office,
and Mr. Rosner's testimony that he accepts collect calls refutes Petitioner's
claim he attempted on one occasion to telephone his lawyer.

aspect of the case. While perhaps the most prudent course for counsel upon receiving the Letter would have been to immediately consult with Mr. Phan, it is found the duty to do so was not triggered. Petitioner's actions fell short of reasonably demonstrating an interest in having a direct appeal filed.

Even had he sufficiently "show[n] that he demonstrated to counsel his interest in an appeal," Movant could not "rely on this evidence solely to establish that, had he received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Medina v. United States*, 167 F. App'x 128, 135 (11th Cir. 2006) (per curiam) (bracketing and internal quotation marks omitted). As previously noted, he has described "no nonfrivolous grounds for appeal in this case and therefore it is unclear that if [counsel] had discussed the appeal, [Petitioner] would have pursued it." *Richards v. United States*, 301 F. App'x 454, 459 (6th Cir. 2008). His expression of potential interest in appealing was other than prompt, and was uncertain in nature. Additionally, he apparently never "asked his [mother] either to hire alternative counsel or notify the court of his desire to appeal[,]" *Medina*, 167 F. App'x at 135, and indeed did not even bother to confirm whether she had placed a call to Mr. Rosner. The instant motion brought under 28 U.S.C. § 2255 was then not filed until September 17, 2007, "more than a year after the court entered

his judgment of conviction on" September 12, 2006. *Id.* Accordingly, he has failed to demonstrate prejudice.

### iv. Recommendation

In light of the foregoing, it is **RECOMMENDED,** as to grounds one and two, that the Petition (Doc. #1) be **DENIED.**

**DONE AND ENTERED** at Jacksonville, Florida, this 4th day of December, 2009.

/s/      Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Timothy J. Corrigan
United States District Court Judge

Asst. U.S. Attorney (Corsmeier)

Charles Truncale, Esquire

Alan E. Rosner, Esquire

Petitioner